UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61646-CIV-ROSENBAUM/SELTZER

N.C., a minor child, by and through
REGINA LYNETT BOSTON, his mother
and natural guardian,

  Plaintiff,

v.

JORGE ALONSO, individually, and
SCOTT J. ISRAEL, as Sheriff of
Broward County, Florida,

  Defendants.
_____/

## ORDER

This matter is before the Court upon Defendants Jorge Alonso and Broward County Sheriff Scott J. Israel's Motion for Summary Judgment [ECF No. 24]. The Court has reviewed the Motion, all supporting and opposing filings, and the record in the case. For the reasons that follow, Defendants' Motion for Summary Judgment is denied.

### *I. Background*

Plaintiff N.C., a minor child, by and through Regina Lynett Boston, his mother and natural guardian, brings claims for false arrest and imprisonment and malicious prosecution against Defendants Jorge Alonso, in his individual capacity, and Scott J. Israel, as Sheriff of Broward County, Florida. ECF No. 1. The claims arise out of N.C.'s alleged participation in a fight and subsequent arrest for disorderly conduct on August 10, 2009. ECF No. 1, ¶¶ 8, 13, 17; *see also* ECF

-1-

No. 25-2 at 3. In his Complaint, Plaintiff alleges four counts: false arrest and imprisonment against Defendant Alonso (individually), cognizable under 42 U.S.C. § 1983 (Count I) and Florida law (Count III); false arrest and imprisonment against the Broward Sheriff's Office (Count II); and malicious prosecution against Defendant Alonso, individually (Count IV). ECF No. 1. Defendants move for summary judgment on all Counts. ECF No. 24.

## *II. Material Facts*

On August 10, 2009, Defendant Alonso responded to a report of a large fight at a football field located at North Lauderdale Elementary School. ECF No. 25-1 at 1; ECF No. 25-5 at 24:20-25:7. Upon arriving at the field, Alonso observed a large group of juveniles dispersing from what appeared to be a fight near the northeast corner of the field near some basketball courts. ECF No. 25-2 at 4; ECF No. 25-5 at 15:16-16:5; 32:13-33:19. Although the juveniles began to scatter, Alonso did not pursue any individuals because he admittedly had not seen any crime being committed. ECF No. 25-5 at 20:1-22:24; 32:13-33:19. After the first fight, Alonso remained at the field to make sure no additional fights broke out and to otherwise keep the peace. *Id*. at 27:1-:8; 32:7-:12.

Within a few minutes of Alonso's arrival, a second altercation involving more juveniles broke out near a structure on the west side of the field. ECF No. 25-5 at 45:12-:20; 59:4-:6; 60:10-:16. According to his testimony, after noticing the second fight, Alonso immediately began running towards the altercation. *Id*. at 71:23-72:14. As he approached the scene of the scuffle, Alonso claims to have witnessed Plaintiff N.C. engage himself in the fight after it had already begun. ECF No. 25-7 at 54:17-55:10; 81:7-:12; 82:4-:10; 84:7-:15. Alonso testified that "[t]he fight was already ongoing and [N.C.] came in from the left and charged [into the fight] in an aggressive manner," and "began to push, shove, wrestle, [and] throw punches." *Id*. The juveniles fled as Alonso approached,

at which point N.C. allegedly ran behind the structure where the altercation was taking place. ECF No. 25-5 at 74:8-75:19; ECF No. 25-7 at 53:5-54.  Based on what he had witnessed, Alonso determined that probable cause existed that N.C. had engaged in the crime of disorderly conduct. ECF No. 25-7 at 54:17-55:10; 84:7-15.  Alonso pursued N.C. and was able to apprehend him, claiming to have lost sight of N.C. for only the brief moment as he fled around the corner of the structure.  ECF No. 25-7 at 53:5-54:3; 136:18-:24.  Deputy Johnson, another officer responding to the call, witnessed Alonso run behind the storage structure as well.  ECF No. 25-6 at 70:21-71:7.

As he was walking N.C. back from behind the structure, N.C.'s father, Norman Clarke, upon seeing his son being escorted by Alonso, became very upset and yelled that Alonso was choking and falsely arresting his son. ECF No. 25-5 at 17:16-:19; 103:6-:20.  Clarke's actions began inciting the crowd to become involved and to shout at the officers.  *Id*.  Alonso claims to have grabbed N.C. by the shoulder and testified that he did not believe that he was inflicting any pain on the child, ECF No. 25-5 at 87:5-89-:10.  But N.C. and Clarke contend that Alonso subdued N.C. by grasping him around the neck and squeezing down, causing N.C. to cry out in pain.  ECF No. 25-9 at 89:5-:17; ECF No. 25-10 at 46:6-47:12.  Deputies Geary and Johnson, who arrived on the scene as Alonso was escorting N.C. from behind the structure, assert that they witnessed Alonso leading N.C. by the shoulder.  ECF No. 25-4 at 29:1-:11; 34:17-35:10; ECF No. 25-6 at 34:4-8.[1]  Alonso maintains that none of the bystanders, N.C., or Clarke ever informed him that the facts were different than what he had observed.  ECF No. 25-5 at 85:17-86:1; 134:18-135:10.

The accounts of N.C. and Clarke, however, differ substantially from that of Defendant Alonso.  N.C. testified that he witnessed a second fight break out near the concession stand

---

[1] Neither Deputy Geary nor Deputy Johnson saw N.C. before this time. ECF No. 25-4 at 30:4-11; 25-6 at 37:1-3.

("canteen") as he was walking towards it and arrived at the stand just as the juveniles involved in the altercation began to scatter because of the police presence. ECF No. 25-9 at 46:4-47:5; 47:25-48:19. Similarly, Clarke stated that he watched several juveniles swarm one individual near the canteen. ECF No. 25-10 at 31:25-33:5. Contrary to Alonso's testimony, Clarke claimed to have run towards the altercation in order to break it up and was successful in doing so before the officers reached the area. *Id.* at 38:21-39:5; 41:17-42:4.

N.C. asserted that he ran behind the structure where he was apprehended by Alonso not to flee from the police, but rather, to return to his father. ECF No. 25-9 at 48:20-49:18. Clarke, surprised to learn that his son was in custody, attempted to inform Alonso that he had the wrong person and that his son was not involved in the altercation. ECF No. 25-10 at 42:15-43:10; 44:23-45:23. He then told Alonso to remove his hand from around his son's neck because it was causing N.C. pain. ECF No. 25-10 at 46:6-47:12.

The interaction between Clarke and Alonso escalated. Eventually, Clarke was placed under arrest. Clarke alleges that as Alonso escorted him to the police vehicle, Alonso told him, "I'm taking your son down, because of you. Because you would not just leave it alone. That's why I'm taking your son . . . . All you had to do was just leave, just let me handle my business and your son would not have been in handcuffs right now." ECF No. 25-10 at 63:6-64:11. Clarke further claims that Alonso continued to taunt him about the situation while he was in the deputy's vehicle. *Id*.

Clarke was charged with obstruction of justice with violence, trespass to property (non-structure), and disorderly conduct. ECF No. 25-2 at 2. N.C. was arrested for disorderly conduct for allegedly engaging in a brawl with other juveniles. ECF No. 25-1. On January 8, 2010, the charges against N.C. were nolle prosequied by the prosecuting authorities. ECF No. 1 ¶ 25. Plaintiffs then

brought the instant action alleging a violation of N.C.'s Fourth and Fourteenth Amendment rights, cognizable under 42 U.S.C. § 1983 and state law.

### *III.  Summary Judgment Standard*

"Summary judgment procedure is properly regarded, not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party

satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that all the evidence on the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

### *IV.  Analysis*

**A. Defendant Alonso's Qualified Immunity Claim (Count I)**

In Defendants' Motion for Summary Judgment, Alonso asserts that he is entitled to qualified immunity on N.C.'s civil-rights claims for false arrest and imprisonment cognizable under 42 U.S.C. § 1983. ECF No. 24 at 3. Qualified immunity protects "government officials performing discretionary functions" from "civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Shepard v. Peryam*, 657 F. Supp. 2d 1331, 1344 (S.D. Fla. 2009) (citing *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001)). It "operates

to ensure that before [officers] are subjected to suit, [they] are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

In evaluating a defense of qualified immunity, the court must view the facts in the light most favorable to the party claiming the injury. *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds)). By viewing the record in this manner, "the court has the plaintiff's best case before it." *Id*. This allows the court "to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute." *Id*. (noting that this method eliminates material issues of disputed fact). It is in this light that the Court assesses Defendants' Motion for Summary Judgment.

The threshold inquiry in a qualified-immunity analysis is whether the officer is engaged in a "discretionary function." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004) (citing *Harlow*, 457 U.S. at 818). Once the defendant establishes that he was performing a discretionary function, the burden shifts to the plaintiff to show that the defendant's actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818; *see also Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The description of a function as "discretionary" does not simply imply that the employee used individual discretion, but rather, that the decision was "of a type that fell within the employee's job responsibilities." *Holloman*, 370 F.3d at 1265-66. This inquiry raises two issues: (1) whether the employee was performing a legitimate job-related function; and (2) whether the employee pursued that function through means that were within his power to utilize. *Id.*; *see also Hill v. Dekalb Reg'l Youth Det. Crt.*, 40 F.3d 1176, 1185

n. 17 (11th Cir. 2004) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority."), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002) .

N.C. concedes that Alonso was acting under color of law as a deputy sheriff during all times pertinent to the instant action. ECF No. 1, ¶ 5. On August 10, 2009, Alonso responded to a call on his police radio, investigated the scene, and made an arrest. Such actions clearly fall within his discretionary authority as a law-enforcement officer. *See Malley v. Briggs*, 475 U.S. 335, 343 (1986) (finding qualified immunity applicable in the case of an officer applying for a warrant). The determination of whether probable cause exists to arrest and the subsequent arrest of a suspect based on a conclusion of probable cause falls precisely within a police officer's authority. *See, e.g., Brivik v. Law*, 2013 WL 5630625 (11th Cir. 2013) (finding that an officer was entitled to immunity based on her arguable probable cause that the suspect had violated a Florida securities statute); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (finding that an officer was acting within his discretionary capacity when he decided to arrest the plaintiff).

Because Alonso was acting within his discretionary power at the time of the events alleged in the Complaint, the burden shifts to N.C. to show that Alonso's decision to arrest him "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

The Supreme Court has elucidated a two-part test for evaluating claims of qualified immunity: (1) whether, in the light most favorable to the plaintiff, "the facts show the officer's conduct violated a constitutional right"; and (2) if so, whether the right was clearly established in

light of the specific context of the case and existing law. *See Shepard*, 657 F. Supp. 2d at 1345 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds)). In making this inquiry, the question is not simply whether the officer violated the Constitution, but whether "in light of precedent existing at the time, he was *plainly incompetent*" in acting the way he did. *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (internal quotations removed) (emphasis added); *see also Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (noting that qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law"). A court need not evaluate the two questions in a particular order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established when "the contours of the right are clear enough for any reasonable official in the defendant's position to know that what the official is doing violates that right." *Shepard*, 657 F. Supp. 2d at 1345 (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)) (internal quotations omitted); *see also Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997). In determining whether a right is clearly established, courts are not concerned with the subjective intent of the officer, but rather, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002). The inquiry is not merely into the relevant statutory law, but also into relevant precedent. *See United States v. Lanier*, 520 U.S. 259, 268 (1997) (noting that when determining whether a right was clearly established under § 1983, the Supreme Court often refers to decisions

of the Courts of Appeals)[2]; *see also Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2093 (2012) ("existing precedent must have placed the statutory or constitutional question beyond debate").

Prior case law need not be factually identical to the circumstances in the case at bar in order to provide an official with "fair warning" that his actions violate clearly established constitutional rights. *Lanier*, 520 U.S. at 268-72 (noting that the Court was not persuaded that "the extreme level of factual specificity envisioned by the Court of Appeals [was] necessary in every instance to give fair warning"); *see also Hope v. Pelzer*, 536 U.S. at 739 ("This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent."); *Skrtich*, 280 F.3d at 1305 n. 9 ("some conduct is so obviously contrary to constitutional norms that even in the absence of caselaw, the defense of qualified immunity does not apply"). As the Supreme Court has explained, officials can still enjoy fair warning that their actions violate established law even in unique factual circumstances. *Hope*, 536 U.S. at 741.

The Fourth Amendment establishes that individuals shall be free from "unreasonable searches and seizures" and that "no Warrants shall issue, but upon probable cause." U.S. Const.

---

[2] Although *Lanier* was concerned with the "fair warning" standard under 18 U.S.C. § 242, the criminal counterpart to 42 U.S.C. § 1983, Justice Souter explained that

> [t]he fact that one has a civil and the other a criminal law role is of no significance; both serve the same objective, and in effect the qualified immunity test is simply the adaptation of the fair warning standard to give officials (and, ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes.

*Lanier*, 520 U.S. at 270-71. Therefore, *Lanier*'s analysis of "fair warning" is relevant in discussing the "clearly established" standard under 42 U.S.C. § 1983.

amend. IV. An arrest in the absence probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010); *see also Herren v. Bowyer*, 850 F.2d 1543, 1547 (11th Cir. 1988). "Probable cause," in turn, arises from "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotations and parentheses omitted). But "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

In this Circuit, an officer may satisfy the probable-cause requirement by demonstrating "*arguable* probable cause." *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 996 (11th Cir. 1995) (citing *Moore v. Gwinnett County*, 967 F.2d 1495, 1497 (11th Cir. 1992)) (emphasis in original). "Arguable probable cause" exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed." *Von Stein v. Brescher*, 904 F.2d 572, 579 (1990).

Because the Court must view the facts in the light most favorable to the allegedly injured party, the inquiry in this case involves whether, as of August 10, 2009, the law was "clearly established" that arresting a person for his mere presence during a physical altercation in which he was not involved[1] was unconstitutional. The answer to this question is that it was.

---

[1] The Court disagrees with Defendants' contention that, even when taken in a light most favorable to N.C., it was reasonable under the circumstances for Defendant Alonso to believe that he had probable cause to arrest N.C. *See* ECF No. 38 at 7. While the testimony provided by Alonso conflicts with that provided by N.C. and Clarke, at this stage, all disputed facts are resolved in favor of N.C. Therefore, the Court must credit the evidence showing that N.C. was not engaged in the altercation.

Although law-enforcement officials who "'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity," Alonso would not have been "reasonable" in believing that probable cause to arrest existed based solely on N.C.'s presence at the football field. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Probable cause does not exist to arrest a person who, without more, is merely in the same social circle as others who may have committed crimes. *See Ybarra*, 444 U.S. at 91 (noting that "a search or seizure of a person must be supported by probable cause particularized with respect to that person").

In *Swint v. City of Wadley, Alabama*, 51 F.3d 988 (11th Cir. 1995), for example, the Eleventh Circuit found a search and seizure of dozens of nightclub patrons to be unreasonable when probable cause to conduct a search relating to the sale of narcotics existed solely with regard to one or two identifiable patrons. *Id*. at 996-97. The Eleventh Circuit held that the other patrons could not be "bootstrapped into probable cause for a broad-based search of the business establishment." *Id*. at 997. Thus, while Alonso may have had probable cause to arrest individuals who were observed fighting, he cannot "bootstrap" such probable cause onto every youth present at the football field. Based on N.C.'s account, Alonso did not have probable cause, particularized to N.C., to suspect that he was engaged in criminal activity. *See Ybarra*, 444 U.S. at 91-92; *see also Holmes v. Kucynda*, 321 F.3d 1069, 1081 (11th Cir. 2003) (This circuit's case law has clearly established that mere presence at the scene of a crime, without more, does not support a finding of probable cause to arrest.") (internal quotations removed).

Nor do Defendants' objections to N.C.'s testimony change the analysis. In their Motion and Reply to Plaintiff's Response, Defendants utterly discount N.C.'s own testimony as a nullity,

claiming "N.C.'s version of the events . . . belies logic." *See* ECF No. 38 at 6. It is true that a plaintiff's testimony can be discounted at the summary judgment stage if "it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (emphasis added). But it is hardly "incredible" that a thirteen-year-old adolescent would "skirt around" a fight in order to purchase some food at a concession stand. *See* ECF No. 38 at 6-7. Therefore, the Court declines to find that N.C.'s testimony flies in the face of logic and should be ignored at this stage of the proceedings.

Defendants' argument that N.C.'s version of the facts is immaterial to the Court's determination of probable cause is similarly unavailing. In this regard, Defendants rely on *Hutton v. Strickland*, 919 F.2d 1531, 1540-41 (11th Cir. 1990), for the proposition that a plaintiff's beliefs concerning the legality of his conduct are irrelevant to the qualified-immunity analysis. *See* ECF No. 38 at 5. But the instant case is distinguishable from *Hutton*, where the plaintiffs, having objectively appeared to have committed all the requisite elements of trespass, defended their actions on the basis that they believed that they were legally entitled to enter the property. *Id*. Here, unlike the *Hutton* plaintiffs, N.C. does not allege that his participation in the conduct forming the basis for his arrest — engaging in a fight — was somehow lawful, but rather, he asserts that he did not participate at all in the alleged criminal conduct. The mere fact that a court must evaluate from the officer's perspective whether probable cause existed does not give a court license on a motion for summary judgment to ignore relevant evidence concerning what occurred that allegedly gave rise to the probable cause — even if that evidence comes from the plaintiff.

Accepting the facts as provided by N.C., the Court finds that Alonso's conduct violated a constitutional right, namely, N.C.'s right to be free from unreasonable searches and seizures under

the Fourth Amendment. Moreover, the principle that an arrest in the absence of probable cause is an unconstitutional seizure was clearly established at the time of the alleged incident. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) ("Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment"); *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) ("[A]n arrest made without probable cause violates the Fourth Amendment."); *see also Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010); *Herren v. Bowyer*, 850 F.2d 1543, 1547 (11th Cir. 1988). Defendant Alonso is not entitled to qualified immunity on Count I, and issues of material fact exist concerning Alonso's version of what transpired on August 10, 2009.

**B. Plaintiff's False Arrest Claims under Florida Law (Counts II and III)**

Both Defendants contend that they are entitled to summary judgment on N.C.'s state-law false-arrest claims because, they assert, Alonso had probable cause to arrest N.C. Under the summary-judgment standard, the Court must view the facts in the light most favorable to the non-moving party and draw all inferences in his favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). For the reasons set forth in Section IV.A., *supra*, the Court finds that Defendant Alonso, taking the facts in the light most favorable to Plaintiff N.C., did not have probable cause to arrest N.C. The conflicting testimony provided in this case creates more than the "mere . . . scintilla of evidence" required to defeat summary judgment, as a "reasonable trier of fact could return judgment for [N.C.] based on his testimony." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 252 (1986). As such, Defendants' Motion for Summary Judgment on Count II and Count III must be

denied, as deciding on these factual matters would require the Court to weigh the evidence and make credibility judgments.

Defendants Alonso and Sheriff Israel also assert that they are protected against civil liability from Plaintiff's false arrest and imprisonment claims by sovereign immunity under § 768.28(9)(a), Fla. Stat. This provision waives sovereign immunity for certain types of tort actions and states in its pertinent part,

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
>
> \* \* \*
>
> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a) (2012). In short, this section protects officers and employees from suit and liability in tort, as long as their actions were committed within the scope of their employment and were not conducted in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property. *Id*. The statute is designed so that "[i]n any given situation either the agency can be held liable under Florida law, or the employee, but not both." *Valdes v. Miami-Dade County*, 2013 WL 5429938 at *18 (S.D. Fla. 2013) (quoting *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996)). Alonso contends that he is protected by this statute because the record contains no evidence of bad faith, malicious purpose, or a wanton or willful disregard of human

rights or safety. ECF No. 24 at 13. Sheriff Israel pleads the alternative, urging the Court to find that Deputy Alonso acted with malice or outside the scope of his employment. *Id*. at 14.

Alonso's conduct clearly falls within the scope of his employment. *See Hill v. Dekalb Reg'l Youth Det. Crt.*, 40 F.3d 1176, 1185 n. 17 (11th Cir. 2004) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the officials duties and within the scope of this authority.") (overruled on other grounds); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (finding that an officer was acting within his discretionary capacity when he decided to arrest the plaintiff); *see also supra* Section IV.A. Thus, the critical inquiry is whether Alonso acted with malice, bad faith, or wanton and willful disregard of human rights, safety or property. *See* Fla. Stat. § 768.28(9)(a) (2012); *see also Brivik v. Law*, 2013 WL 5630625, at *2 (11th Cir. 2013) (noting that under Florida law, police officers are immune from suit unless they meet one of these conditions).

N.C. has provided more than "threadbare recitals of the elements of a cause of action"; he has introduced facts that, if true, may lead a jury to conclude that Alonso acted with malice. *See Iqbal*, 566 U.S. 6, 678 (analyzing the *Twombly* pleading standard and noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). In particular, if a jury chose to believe Clarke's testimony, it could find that Alonso arrested N.C. not because he violated the law but only to punish Clarke — a circumstance that, if true, could constitute a bad-faith action, at the very least. While Alonso argues that no genuine issue of material fact exists because no one can refute his testimony, *see* ECF No. 24 at 13, N.C. claims that Alonso could not have seen him because he was not engaged in the altercation. Nor, as Alonso suggests, can the Court choose between the versions of the incident and simply dismiss N.C.'s

statement. N.C. has introduced sufficient evidence to create a factual dispute as to the existence of probable cause, and, under Florida law, "malice may be inferred from the absence of probable cause." *Colonial Stores, Inc. v. Scarbrough*, 533 So. 2d 1181, 1185 (Fla. 1977); *see also Franco v. Caldwell*, 2011 WL 2262481 (S.D. Fla. 2011) (noting that a factual dispute precludes the determination of whether the officer acted with malice).

Drawing all inferences in favor of Plaintiff, genuine issues of material fact remain as to whether Alonso arrested N.C. maliciously and without a lawful basis, precluding summary judgment on this issue. The testimony provided by N.C. and his father allow a jury to conclude that Alonso, in arresting an individual without probable cause, acted with malice or a wanton disregard of human rights. Also because a dispute exists over critical facts regarding the incident preceding the arrest, the Court is not able to grant summary judgment to Sheriff Israel, as the jury could alternatively reasonably conclude that Alonso did not act maliciously, thereby precluding immunity for the Sheriff under Section 768.28(9)(a), Fla. Stat. Because on this summary-judgment record, the Court cannot determine the existence of statutory protection under § 768.28(9)(a), Fla. Stat., the Court must deny summary judgment on the basis of alleged immunity under that statute.

**C. Defendant Alonso's Malicious Prosecution Argument (Count IV)**

In order to establish a claim for malicious prosecution under Florida law, a plaintiff must prove six elements:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of

> the present defendant; (6) the plaintiff suffered damages as a result of the original proceeding.

*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Defendant Alonso asserts that N.C. has failed to provide sufficient evidence to establish the fourth and fifth elements. In particular, Alonso contends that he is entitled to summary judgment on Plaintiff's malicious-prosecution claim (Count IV) because, first, Alonso had probable cause to arrest N.C. (element four), and second, N.C. has failed to establish that Alonso acted with malice (element five). ECF No. 24 at 15-17.

But, as previously discussed, taking the facts in a light most favorable to the non-moving party, a reasonable jury could conclude that Alonso lacked probable cause to arrest N.C. for disorderly conduct. *See supra* Section IV.A. Additionally, Clarke testified that after he was placed under arrest, Alonso stated to him, "I'm taking your son down, because of you. Because you would not just leave it alone. That's why I'm taking your son . . . . All you had to do was just leave, just let me handle my business and your son would not have been in handcuffs right now." ECF No. 25-10 at 63:6-64:11. A reasonable jury could conclude that these statements evidence malice on the part of Alonso. Moreover, when considering a malicious prosecution claim, "it is not necessary for plaintiff to prove actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause . . . ." *Alamo Rent-A-Car, Inc. v. Mancusi*, 630 So.2d 1352, 1357 (Fla. 1994); *see also Reed v. State*, 837 So.2d 366, 369 (Fla. 2002) (holding that legal malice merely requires proof of an intentional act performed without legal justification or excuse, and such malice may be inferred from one's acts and does not require proof of evil intent or motive); *Morgan International Realty, Inc. v. Dade Underwriters Insurance Agency*, 617 So.2d 455, 458 (Fla. 3d DCA 1993) (holding that malice may be actual or subjective malice, or legal malice, which may be

inferred from circumstances such as the want of probable cause, even though no actual malevolence or corrupt design is shown).

Alonso's contention that N.C. has failed to introduce any evidence that he acted or was motivated by malice is also unavailing. ECF No. 24 at 16-17. Contrary to Alonso's contention, N.C. need not prove that Alonso was motivated by a malicious purpose. Here, N.C. has sufficiently alleged the lack of probable cause. *See supra* Section IV.A. As previously noted, a lack of probable cause can be an adequate basis for finding malice in malicious-prosecution claims. Moreover, as the Eleventh Circuit has explained, "It is well settled that in an action to recover damages for malicious prosecution, where, as here, the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury." *Kingsland*, 382 F.3d at 1235 (internal quotation and citation omitted). An obvious dispute remains in the instant action regarding the occurrences preceding N.C.'s arrest. Accordingly, N.C. has made an ample showing to overcome summary judgment as to the fourth and fifth elements of a malicious prosecution.

### D. Plaintiff's Claims for Punitive Damages

Finally, Defendants contend that N.C. is not entitled to punitive damages on his claims. ECF No. 24 at 17. Punitive damages can be assessed in actions under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Furthermore, when such evidence is presented, a jury may consider whether the imposition of punitive damages is appropriate. *Id*. at 51.

In this case, considering the facts in a light most favorable to N.C., evidence exists that Alonso arrested N.C. without probable cause. As a law-enforcement officer, Alonso knew that an

arrest lacking probable cause violates the Constitution. A reasonable jury may conclude that Alonso acted with reckless disregard of N.C.'s federally protected rights, a circumstance that is "sufficient to send to the jury the question of punitive damages." *Childs v. Dekalb County, Ga.*, 416 F.App'x. 829, 833 (11th Cir. 2011) (holding that evidence that the officer stopped the plaintiff without reasonable suspicion when the officer was trained that such a detention was unlawful was sufficient to send the question to the jury). For this reason, the Court must deny Defendants' Motion for Summary Judgment as it attempts to preclude N.C. from seeking to collect punitive damages on his claims.

## *V. Conclusion*

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendants Jorge Alonso, individually, and Scott J. Israel, as Sheriff of Broward County's Motion for Summary Judgment is **DENIED**.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 13th day of November 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:

The Honorable Patrick M. Hunt

Counsel of Record